Laubie, J.
This proceeding is brought to reverse the judgment of the court below, rendered in favor of the defendant, by the court taking the case from the jury at the conclusion of the plaintiff’s evidence, and dismissing the petition. To that action of the court below the plaintiff took an exception, and brings upon the record, by a bill of exceptions, all of the evidence that was given in the court below to the jury, includng exceptions to the exclusion of evidence offered by him.'
The action was brought by Grant to recover for personal injuries sustained bj him while in the employment of ‘ the company as head brakeman of a freight train. JHe stepped off, and directly in front, of a moving engine in order to go forward to turn a switch at the place in question, which 'was in the state of Pennsylvania, as his train, going east, had to take the siding at that point to allow another train, west *364 bound, to pass. As he stepped off in front of the moving engine, his foot slipped off the tie he stepped on, and he fell, by reason, as he alleged, of the negligence of the defendant' in removing the ballast from between the ties at that point, and that the advancing engine ran over him, injuring him permanently.
During the progress of the trial the plaintiff called a witness, apparently as an expert, and put to him a hypothetical question, the object of which, as stated by counsel in argument here, was to prove that the plaintiff, on the occasion in question, attempted to perform the duty as it was usually done by brakemen in that business. So far as the question is concerned, it is sufficient to say that this is a mistake. The witness was not, and had not been, employed on defendant’s road, and after stating the facts of the case hpyothetically, which I need noUread, the question proceeds as follows :
“Under those circumstances, you may state to the jury what would be the ordinary and usual method adopted by railroad men in getting off and on trains, and opening that switch and turning that train onto the side track?”
The question called for the opinion of the witness as to what brakemen would do, and was properly excluded by the court. Now, the record further states that “thereupon the plaintiff, after the objection was sustained, proposed to prove by the witness, in answer to the question, that the usual and ordinary method then adopted by railroad brakemen for leaving that train for the purpose of reaching that •switch and throwing it, turning that train onto the side track, was to get out over the pilot of the engine and step off between the rails, and run forward to the switch; which the court excluded, and refused to permit the witness to answer, and refused to permit the plaintiff to prove -by the witness as above proposed, and plaintiff excepted. ’ ’
Counsel claim that this was an offer to show that the usual' *365 and ordinary practice of brakemen in that business was to perform the work as plaintiff did it on the occasion in question — that he adopted the usual method in the business. Instead of that, the statement confines it down to that train and that switch — that it was desired to prove by the witness that the usual and ordinary method adopted by railroad brakemen for leaving that train for the purpose of reaching that switch, and turning that train onto the side track, was to get over the pilot of the engine, etc., as to which the witness could not testify, never having been on the train; nor was the offer broad enough, if the claim of the plaintiff’s counsel was correct, as a question of law, that they were entitled to show what the usual custom was among brakemen in performing work of that character, and under similar circumstances, in order to exonerate the plaintiff from the charge of negligence. But were it as counsel claim, we think the court ruled rightly, and that it was not competent, for the purpose of showing that the plaintiff was not negligent in the way and manner in which he performed the work, to show that others did so in the same reckless way. What careful, prudent men would usually do, under the same circumstances, is not ordinarily a matter of direct proof, but is one of inference from common knowledge of what the minds of such men would prompt them to do, of which the jury are as competent to judge as the witness; and when such inference is plain and unmistakable, as in the present case, it is immaterial that a ’class of men usually act in opposition thereto.
The main question that counsel rely upon in this case is in regard to the action of the court in taking the case from the jury. After the conclusion of the plaintiff’s evidence,a motion was made upon the part of the defendant to take the case from the jury and dismiss the petition,' and that was granted; and the question is,whether the action of the court was proper and legal.
*366 Upon this question counsel for the plaintiff claims that if there was a scintilla of evidence upon each proposition that the plaintiff was required to prove to entitle him to recover, the case could not properly be taken from the jury by the court, and that it was error to do so in this instance, as such evidence was given. And upon this proposition a great many cases have been cited by counsel for plaintiff, who has evidently been very industrious in collating the decisions of the various states upon the point.
I do not propose to refer to the cases decided by courts outside of Ohio,because their name is legion, and it is hardly worth while to involve myself in- a labyirnth of cases, when our own Supreme Court has disposed of the question, and fixed the rule to be followed by the lower courts in this regard.
We do not dispute the proposition that ordinarily the question whether he plaintiff has been guilty of contributory negligence is a question of fact to be disposed of by the jury, under proper instructions from the court.
The question of negligence is not an abstract one in any given case. It is one which must be considered with reference to the relations of the parties litigant Contributory negligence consists, generally, either in an omission to perform an act which it is the duty of the plaintiff to perform for his own benefit or safety; or, in conducting a business or enterprise, or performing an act, without exercising that degree of care which the law requires him to exercise for his own safety. Such duty arises either out of an obligation of law, or of contract. Therefore, whether such duty rests upon the plaintiff, is a question of law; but while it is for the court to say whether the duty or obligation rests upon the plaintiff, yet its determination generally involves a question of fact, because such duty would, under certain circumstances, rest upon the plaintiff, while, if those circumstances were absent, it would not. Therefore it ordi *367 narily becomes a question of fact for tbe jury to determine, under proper instructions from the court, whether those circumstances did actually exist so as to cast the duty upon the' plaintiff. If, for instance, the rules of the defendant employer required the plaintiff to perform the act in a .certain manner, and he chose to adopt a far more hazardous method, or, in the absence of such rules, if there were two methods equally open to the plaintiff for performing the act, one of which was a reasonably safe method, and the other an extremely hazardous one, it would be his duty to adopt the method prescribed by his employer in the one instance, or the reasonably safe method in the other; and if he chose, unnecessarily, to do otherwise, he would do it at his own risk.
The law, having a high regard for human life, and on the ground of public policy, requires every one to exercise care for his own safety, and it will not permit him to cast the whole responsibility for his safety upon others. But this wholesome rule is sometimes lost sight of, the result largely of the energy that counsel so often exercise in pressing their case upon court and jury.
Generally the question of contributory negligence is one of law and fact, but it may be one of .law only.
Now, to determine that' — whether.it is a question of law only, or one which must go to the jury in the first instance —our court of last resort has, in a number of cases, declared •certain principles, which may be formulated into one rule, as follows:
If there is evidence tending to prove every material fact which it is necessary for the plaintiff to prove to entitle him to recover, the case must be submitted to the jury, unless all the material facts as to the duty and conduct of the plaintiff are certain and undisputed, and admit of no reasonable inference but that of negligence on his part; in which case it is wholly a matter of law, and need not be submitted to the jury.
*368 Counsel for plaintiff contends, however, that in no instance can a case be taken from the jury when there is some? evidence, however slight, tending to prove every material-fact of the plaintiff’s cause of action, and cite in support thereof, amongst others, the case of Ellis and Morton v, The-Ohio Life Insurance and Trust Company, á Ohio St. 628, and which presents the rule contended fox in a clear light,, as follows:
“The courts of this state,in a proper case, have the power to take the evidence given by the plaintiff from the jury and order a peremptory non-suit.
‘ ‘ Such a motion involves an admission of all of the fact& which the evidence in any degree tends to prove, and presents only a question of law,whether each fact indispensable to the right of action and put in issue by the pleadings has-been supported by some evidence.
“ If it has, the motion must be denied; as no finding of facts by the court or weighing of evidence is permitted.’’
While this rule was established by a divided court, I believe the law thus laid down is uniformly followed in this" state when applicable, viz: in cases where the testimony is conflicting, the facts uncertain, or the proper inferences to-be drawn therefrom doubtful. It is not often that counsel' and court differ as to the law, nor is it in regard to the law that so many mistakes are made. It is the application of it" to given cases, not what the rule is, that generally causes-differences of opinion. And so it is in the present case.
If we apply the principle of the case referred to, to the-case before us, and take it out of the region of abstract propositions, we may, perhaps, get a clearer idea and view of the rule itself, and at the same time see that the rule I have formulated is not in conflict therewith.
In a case like the present, the plaintiff is required to prove,, in order to recover, the negligence alleged on the part of the defendant, and that it was, as between the parties, the sole proximate cause of the injury which he received. There *369 fore, if facts disclosed in the testimony introduced by the plaintiff, raise a presumption of negligence upon his part, contributing directly to his injury, then it rests upon him to. show, by a preponderance of evidence, other facts sufficient to remove that presumption; or, if the defendant takes the course that was taken in this case, and offers no evidence, but submits it on the®evidence offered by the plaintiff, then the evidence of the plaintiff must be such as not to create such presumption; or if it does create such presumption, then that it shows other facts sufficient to remove and overcome such presumption before he can recover.
Now, if the case were such that the facts which the plaintiff introduced in evidence raised this presumption of negligence on his part, and there was no evidence to overcome such presumption — no evidence of other facts which might be sufficient to remove such presumption, the rule established in the case named would not be complied with, because the plaintiff had not given any evidence in support of a material point in his case.
As to the facts in the case before us, as proved by the plaintiff himself, it is sufficient now to say, that no reasonable mind could but believe that the plaintiff was guilty of gross negligence in placing himself on the outer point of the pilot of a locomotive going faster than he could walk, and in the darkness and rain stepping off immediately in front of it; or, which is sufficient for my present purpose, that such facts indubitably raised a presumption of negligence; and no evidence was introduced of the existence of other facts which could remove that presumption. There was evidence from himself relating to his conduct, detailing the facts of the occurrence; but there was no evidence introduced of a single fact which tended to rebut, control or overcome that presumption, and he did not [therefore offer evidence tending to prove every fact which^it was necessary for him to establish in order to recover.
*370 Further, if the second or qualifying proposition of the rule I have formulated is correct, viz., if all the material facts as to the duty and conduct of the plaintiff are certain and undisputed, and admit of no reasonable inference but that of negligence on his part, the question of his negligence is one of law only, then it is apparent that the court will determine and declare the legal effect of such undisputed facts, notwithstanding there might be evidence tending in some slight degree to prove care on the part of the plaintiff, and consequenlty, that the rule declared in Ellis and Morton v. The Ins. Co., supra, does not apply to and cover all cases; and that the proposition is correct, admits of no doubt.
In Pennsylvania Company v. Rathgeb, 32 Ohio St. 66, it was held:
“1. Ordinary prudence requires that a person in the full enjoyment of the faculties of hearing and seeing before attempting to pass over a known railroad crossing, should usé them for the purpose of discovering and avoiding danger from an approaching train, and the omission to do so without a reasonable excuse therefor, is negligence, and will defeat an action by such person for an injury to which such negligence contributed.
“2. In an action for damages for alleged negligence, the question of negligence on the part of the defendant, or of contributory negligence on the part of plaintiff, is generally a mixed question of law and fact to be determined by the jury under the proper instructions from the court.
“3. But if all the material facts touching the alleged negligence be undisputed, or be found by the jury, and admit of no rational inference but that of negligence, in such cáse the question of negligence becomes a matter of law merely, and the court should so charge the jury.”
It is said in the opinion, pp. 75, 76: “In the case before us the evidence is clear that Rathgeb might have seen the train by merely using his eyes-in time to prevent a collision. There were none of the circumstances referred to in the Crawford and Snyder cases which absolved him from the duty of exercising his vision. There was no reason why he *371 should not have looked; and had he done, so he would not have been hurt.
“A case of contributory .negligence was decided by the .Supreme Court of the United States, October term, 1877, The Baltimore and Potomac Railroad Company v. Jones, Weekly Law Bulletin, January 7, 1878. Jones was a laborer in the employ of the company. The men were in the habit of riding to and from their work. A locomotive and box car was used for this purpose, but the men, or some ■of them, often jumped on the pilot, and rode there. Jones had been cautioned against this, and forbidden to do so, but ■on the day when he was hurt, he disobeyed the injunction, .and jumped on the pilot; by a collision he was hurt. The court was asked to charge as follows: ‘If the jury find from the evidence that the plaintiff knew the box car was the proper place for him, and if he knew his position on the pilot of the engine was a dangerous one, then they will render a verdict for the defendant, whether they find that its agents allowed the plaintiff to ride on the pilot or not.’ This charge was refused. Mr. Justice Swayne says, ‘The plaintiff was not entitled to recover. It follows that the court erred in refusing the instruction asked on this subject. If the company had prayed the court to direct the jury to return a verdict for the defendant, it would have been the duty of the court to give such instructions, and error to refuse. ’
“In the case before us the negligence of the plaintiff was such that the jury should have been told that it barred his right of recovery. ”
It may be noted that the facts which the court held admitted of no rational inference but that of negligence in the Rathgeb case,and also in the case cited therein of The B. & P. R. Co. v. Jones, were not so pregnant of negligence in the plaintiff, as in the case we are considering.
In Winchell v. Crider, 29 Ohio St., it was said by Mcilvaine, J., pp. 486-87, “These requests assume that the signature was genuien, but obtained by fraud and without negligence on the defendant’s part. And the genuineness of the signature being granted, the case on the proof was that the defendant relied solely on the representations of Ingalls as to the character of the paper. His own testimony was: ‘I *372 did not read the papers at the time I signed them. I can read. No objection was made to my reading the papers at or before the time I signed them.’ When all the testimony was in, if it had been demurred to on the ground that proper care and caution had not been exercised by the defendant in 4he premises, the demurrer should have been sustained by the court. Upon this fact there was no issue of fact for the jury to determine. The admitted conduct of the defendant presented a mere question of law. And the law', upon the admitted fact,is that the defendant was guilty of negligence,, and therefore, there was no error to his prejudice in refusing to give these instructions to the jury.”
It is apparent that where the question becomes merely one of law, it is entirely immaterial whether the court tells the jury to return a verdict for the defendant, or takes the case from the jury and enters judgment itself, because either course would produce the same result — a dismissal of the case.
In Ry. Co. v. Crawford, 24 Ohio St. 631, the same rule was declared as in the Rathgeb case; and in Ry. Co v. Picksley, ib., 254, and Ry. Co. v. Murphy, 50 Ohio St. 135, the rule is in no sense infringed; it is simply stated in different language — that where different minds may reasonably draw different inferences from the facts, then it is a question for the jury. The court must determine, from a consideration of the facts themselves, whether they are sufficient to produce that quandary, and it exercises that power for no other purpose than to ascertain whether the facts touching the alleged negligence are sufficient in law to require the question to be submitted to the jury; and if the court is convinced that they are not sufficient, and are undisputed, ¿nd admit of no reasonable inference save that of negligence, if it may not say so, and so hold, then the consideration of the question by the court is useless, and the rule declared in these cases a nullity.
If the doctrine of the last named cases can be considered as inconsistent with the rule declared in Ellis & Morton v. Ins. Co., then they must be held as qualifying that rule,for *373 they undoubtedly express the law on the subject as i.t is established to-day.
In the case before -us, the plaintiff was the only witness who testified in regard to the manner in which he received his unjuries on the night in question; and one other witness only, Mr. Evans, whose deposition was read in evidence by the plaintiff, and who was an employe of the defendant on ■one of its locomotives or trains, and who passed, and got off and on his enigne at the place in question daily, testified as to facts bearing upon the question.
The plaintiff’s evidence showed the facts following: The plaintiff was head brakeman upon a freight train; he had beeii in the employ of the company, running past this point ■of passage of trains, for some time. He had been along there the forenoon of the day of the accident, going west, and the accident happened as he went east again. On the occasion in question his train proceeded eastward up to this point; it, was late in the night; it was, as he states,' a dark night, and raiuiug. He was informed that the train was to .stop at this passage point and take the side-track, and it was his duty as head brakeman to go forward and open the switch ■and turn the train upon the side-track. He was in the cab of the engine. His conductor was there, the enigneer and fireman, and as they approached near to the place, finding it was about the time for him to get off to go to the switch, and having obtained a key from somebody present to open it, he took his lantern and went out, not to the step of the ■engine on either side, but he went along over the running board of the engine, forward, and finally planted himself on the extreme point of the pilot, where he said he caught hold of the coupling bar of the engine, perhaps two feet high, to enable him to maintain himself in that position until he wanted to get off. tie had his lantern with him, and the light, he said, of the lantern, and of the head-light of the engine, -cast their rays in front, and he could not see imme *374 diately below liim the condition of the track, and he did not look, and had no business to look there; his business, he said;’ was to look ahead; and when the engine arrived at the proper point, as he supposed, he stepped off in the center of the track immediately in front of the locomotive, and his foot lit on a tie, and slipped off the tie and went into a hole where the balast had been removed, and he fell and received the injury of which he complains, by the engine running over part of his person.
He stated that the engineer had suggested to him in some words he could not repeat, not to stop him unless he had to, as they were on an ascending grade; did not tell him he should not stop him, but not to stop him at the switch if he could help it, and that the train was going from four to six miles an hour, faster than a man could well walk, or than he could walk.
Can it be possible that any sensible man’would say that he was not guilty of negligence, and of the grossest kind? He was simply courting death. Simply inviting his own destruction, and he even insisted that he did not do as Evans said he would have to do under those circumstances. Evans declared, “You dare not step off; if you do your foot is caught, you have got to jump and gain your distance ahead because the engine is moving at a rate faster than you could walk;” and the plaintiff was insisting he did not jump, but simply stepped off. It cannot be possible for men to differ as to his negligence. He could have done nothing more towards his own destruction unless he had thrown himself down in front of the engine.
Now, what circumstance did he show by his evidence, and that of his other witnesses, to control the legal presumption of his negligence? Was there any other means to get off the engine? Why, he said himself there was on either side, handholds and steps. Was there any place he could get off at that point except immediately in front of the engine? *375 He himself said there was; he could have gotten off upon the right side, in the ditch; there was no water in that ditch, ballast — cinders—had been thrown into it from between the ties, and loose lime. Evans said it would be like stepping into flour; and the switch he was to throw was on that side of the track. Evans testified he could safely have stepped off there, “I do it every day off my engine. ’’ The plaintiff himself conceded that he could have done so. So there was another, and reasonably safe way for getting off to perform that duty, and the plaintiff unnecessarily chose the extremely hazardous on. He chose to be reckless, to perform his duty to himself as well as to his master in an utterly reckless method, instead of taking the reasonably safe method that was open to him of getting off at the side.
But counsel say, the rule is that if he believed that to be the safer course, or a safe course, and he had reasonable grounds to so believe, then he was not guilty of contributory negligence, and we are referred to the case of the Railroad Company v. Mowery, 36 Ohio St. 418.
The principle there decided is a familiar one, that where a passenger is brought face to face with imminent danger, by the company’s negligence,the company cannot require of him the exercise of the highest discretion, and his conduct is not to be weighed in golden scales. If he makes a mistake on the spur of the moment, in an endeavor to get rid of the danger brought thus suddenly upon him by the negligence of the defendant, it cannot be said, because he did not take the safest course, that he was guilty of negligence per se. If under such circumstances he did believe, and had reasonable grounds to believe, the course he pursued was the safer or a safe course, that would exculpate him. But, how is it in this case — was there any such state of facts ? This plaintiff deliberately chose the course he pursued to perform the act. He did it under no sudden pressure of haste, nor because of any danger suddenly brought upon *376 •him by the negligence of the defendant or anybody. Can we apply such law to him? But if such were the law as applicable to this case, the plaintiff would be entitled to have •testified that he believed that was the safer course for him to pursue. But he did not so testify; he was not asked in regard to it; and the presumption would be that he was not asked, because the answer would have been unfavorable. 3 Ohio St. 384-85.
G. F. Arrel, for plaintiff.
Jones & Anderson, for defendant.
We see no error in the record in the matters complained of, and the judgment is therefore affirmed.